UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSALIND LOGIE,
    Plaintiff,

    v.                                                    CIVIL ACTION NO. 1:17-cv-10949-PBS

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
BOSTON CARMEN'S UNION
LOCAL 589,
NORMAN W. MICHAUD,
SCOTT C. ANDREWS,
JOHN J. LEE, LARRY KELLY,
    Defendants.

REPORT AND RECOMMENDATION ON DEFENDANT BOSTON CARMEN'S
UNION'S MOTION TO DISMISS (#21).

KELLEY, U.S.M.J.

I.   Introduction.

Plaintiff Rosalind Logie is a former employee of the Massachusetts Bay Transportation Authority (MBTA). Plaintiff contends both that she was wrongfully terminated by the MBTA because of her diabetes, and that the Boston Carmen's Union, Local 589 (the Union) failed to represent her and preserve her job. Where Plaintiff has failed to plead a cause of action against the Union, the Court RECOMMENDS that DEFENDANT Boston Carmen's Union, Local 589's Motion to Dismiss (#21) be GRANTED.[1]

---

[1] Plaintiff also sued two union officials, Larry Kelly and John J. Lee, in their individual and official capacities. They filed a separate motion to dismiss (#20), for which the court has issued a separate Report and Recommendation.

II. Facts.

The facts of the case are laid out more completely in the Report and Recommendation on the MBTA defendants' motion to dismiss, which serves as a companion to this Report and Recommendation. A limited recital of the facts, focused on plaintiff's allegations regarding the union, is required here. Plaintiff was hired by the MBTA as a part-time Red Line train operator on December 7, 2009. (#1 at 2.)[2] Plaintiff was a member of the Union. *See* #1. Defendant John J. Lee was, according to plaintiff, president of the Union at all relevant times. *Id.* at 2 ¶ 6. Defendant Larry Kelly was, according to plaintiff, a delegate of the rapid transit division of the Union at all relevant times. *Id.* at 2 ¶ 7. Beginning in 2012, plaintiff took a series of medical leaves because of "brittle" or not-well-controlled diabetes, worked for a period as a customer service representative (CSA), and did not return to driving the train. *See*, *e.g.*, *id.* at 3 ¶¶ 4, 6, Ex. B, Ex. F, Ex. V.

On July 1, 2014, after her extended medical leave had apparently expired, *see id.* at 5 ¶¶ 11-12, plaintiff filed a grievance with her union. *Id.* at 5 ¶ 12, Ex. T. The Union presented the grievance to the MBTA, which denied the grievance on July 18, 2014, based on plaintiff's absence from August 5, 2013 to June 25, 2014, and her failure "to provide the Authority with an expected return to work date during her absence." *Id.* at 5 ¶ 12, Ex. U.

The MBTA sent plaintiff a letter dated July 23, 2014, stating plaintiff had not contacted the MBTA regarding her leave, but that the MBTA had received information from her doctor. *Id.* at 13, Ex. V. The letter noted that the MBTA had provided plaintiff with accommodation since she was medically disqualified as a train operator in June 2012, including "temporary assignment to a [CSA] position and, when that position ended, an extended leave of absence." *Id.* Ex. V at 1. The letter stated, further, that plaintiff was still unable to perform the motorperson position and that

---

[2] Plaintiff's complaint contains inconsistently numbered and unnumbered paragraphs. Therefore both page and paragraph number references will be used.

there was "no clear time frame for resuming [her] job duties. At this point, you have been unable to perform your regular job duties for over two years and it is still unclear when you will be able to perform your job duties." *Id.* Ex. V at 1. Plaintiff was invited to meet with the MBTA in person or by telephone before the MBTA made a final decision. *Id.* Ex. V at 2. There is no record that plaintiff responded.

The MBTA discharged plaintiff on September 29, 2014. *Id.* at 6 ¶ 14, Ex. Y.

On December 10, 2014, plaintiff's primary care physician again contacted the MBTA stating that plaintiff could return to work as a CSA but not as a train conductor and "[i]f this is not a possibility, then she will be unable to come back to work." *Id.* Ex. W. A grievance was apparently presented by the Union on her behalf on December 17, 2014, and was denied on January 14, 2015. *Id.* Ex. Y. The denial states that plaintiff had not "demonstrate[d] an ability to return to work as a Motorperson" and was found to have violated MBTA rules, including the attendance policy. *Id.*

On March 23, 2017, plaintiff a filed charge with the EEOC, and she filed a charge with the Massachusetts Commission Against Discrimination (MCAD) on April 5, 2017. (#10-1 Ex. A) The EEOC issued a right to sue letter to plaintiff on April 25, 2017. *Id.* Ex. B.

Plaintiff filed the present action, pro se, on May 22, 2017. (#1.)[3]

Plaintiff was initially given 90 days from August 14, 2017 to serve defendants, and was permitted to "have service completed by the United States Marshals Service (USMS)." (#7.) Summonses were issued the same day. (#8.) Plaintiff claims to have provided the USMS with papers for service by giving the papers to her son, in federal custody, to pass on to the USMS. (#29 at 11.) Plaintiff claims her son's account was not charged and the paperwork was not mailed until October 16, 2017. (#29 at 6, 11; #29-2, Exs. 1, 2.) The USMS received the paperwork for service

---

[3] Plaintiff has been assisted by a non-lawyer, Tony Gaskins, in this matter. *See*, *e.g.*, #4.

on Michaud on or before October 23, 2018 and for the remaining defendants on or before November 7, 2017. *See*, ##9, 14-16, 18-19. The Union was served on November 20, 2017. (#19.) The Union moved to dismiss the claims against it on December 15, 2017 based on late service and plaintiff's alleged failure to state a claim for which relief may be granted. (#21.)

### III. Legal Standard.

Defendant moves to dismiss plaintiff's claim both because service was allegedly untimely, and because the complaint fails to state a claim for which relief may be granted. (#20.)

A. Requirement to Make Timely Service.

Under the Federal Rules,

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Local Rule 4.1(b) states:

> (a) Time Limit. Any summons not returned with proof that it was served within 90 days of the filing of the complaint is deemed to be unserved for the purpose of Fed. R. Civ. P. 4(m).
>
> (b) Showing of Good Cause for Failure to Comply. Counsel and parties appearing pro se who seek to show good cause for the failure to make service within the 90-day period prescribed by Fed. R. Civ. P. 4(m) shall do so by filing a motion for enlargement of time under Fed. R. Civ. P. 6(b), together with a supporting affidavit. If on the 14th day following the expiration of the 90-day period good cause has not been shown as provided herein, the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court. The clerk shall furnish a copy of this local rule to counsel or pro se plaintiffs, together with the summons. Such notice shall constitute the notice required by Fed. R. Civ. P. 4(m). No further notice need be given by the court.

B. <u>Failure to State a Claim, Rule 12(b)(6)</u>.

Under Rule 12(b)(6), plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). As the First Circuit has stated, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (citing *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (quoting *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997)). Courts employ a two-step process to evaluate a motion to dismiss, "[a]t the first step, we distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited. . . . At step two, we must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (internal quotations and citations omitted) (affirming motion to dismiss).

As a pro se litigant, plaintiff is entitled to have her complaint construed liberally. *Wedeen v. Green River Power Sports*, 14 F. App'x 6, 6–7 (1st Cir. 2001) (quoting *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir.1997)). Pro se plaintiffs are not entirely relieved of the pleading requirements:

> [A] plaintiff, even one proceeding pro se, may not rely on "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation." *Berner v. Delahanty*, 129 F.3d 20, (1st Cir. 1997) (internal citations omitted). In addition, the "duty to be less stringent with pro se complaints does not require [the court] to conjure up implied allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (internal citations omitted).

5

*Baxter v. Conte*, 190 F. Supp. 2d 123, 126 (D. Mass. 2001) (allowing motions to dismiss).

IV. Discussion.

Interpreted broadly, plaintiff claims the Union violated its duty of fair representation (DFR), and violated Section 1983. In her complaint, plaintiff states, as Ground II,

> Defendants and Union breached their duty of fair representation to the Plaintiff when they failed to adequately represent her at any/all disciplinary proceedings in the suspension and subsequent discharging of her by the MBTA, when, as a handicap [sic] union member and employee, she was protected under the ADA and FMLA, and that alternative work placement should have been sought and was not by the union. . . .

(#1 at 7 (citing the FMLA and Section 1983).) This argument is echoed in plaintiff's opposition to the Union's motion to dismiss, stating that the Union knew or should have known plaintiff was "protect[ed] under the FMLA and ADA," (#29 at 8), and that the Union violated Section 1983 (#29 at 9) by failing to "provide her with workplace security and fair representation from any adverse actions against her by her employer" where she was protected "under state law . . . [a]nd under the ADA and Rehabilitation Act."[4] Although plaintiff did effectuate service on the Union, plaintiff fails to state a claim under the theories she has advanced.

A.  Plaintiff's Delay in Serving the Union was Excusable.

Plaintiff filed the present action, pro se, on May 22, 2017. (#1.) Plaintiff was initially given 90 days from August 14, 2017 to serve defendants, and was permitted to "have service completed by the United States Marshals Service (USMS)." (#7.) Plaintiff claims to have provided the USMS

---

[4] Plaintiff also cites the Rehabilitation Act in her opposition to defendants' motions to dismiss. *See*, *e.g.*, #29 at 8. While there is no Rehabilitation Act claim in plaintiff's complaint, it appears plaintiff cites the Act because its standard mirrors the standard of Title II of the ADA—plaintiff brings a claim for violation of the ADA in her complaint. Nonetheless, there are no facts alleged that the Union discriminated against plaintiff because of her alleged disability.

with papers for service by giving the papers to her son, residing in federal custody, to pass on to the USMS. (#29 at 6, 11.) One defendant was served on November 2, 2017. (#9.) The USMS possessed the remainder of the summonses no later than November 7, 2017. *See*, ##14-16, 18-19. The Union was served on November 20, 2017. (#19.)[5]

      Plaintiff's late service to the Union is excused for good cause. Plaintiff provided the summonses to the USMS, which was apparently unable to make service on time. In the First Circuit, this is sufficient to show good cause for delay. *See Laurence v. Wall*, 551 F.3d 92, 94 (1st Cir. 2008); *Boyd v. Rue*, No. C.A. 09-10588-MLW, 2010 WL 3824106, at *1 (D. Mass. Sept. 27, 2010) ("So long as such a plaintiff provides the information necessary to identify the defendant, courts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of Rule 4(m).") (internal quotations and citation omitted). Moreover, there is no evidence that plaintiff's failure to make timely service was intentional or in bad faith. *See Cichocki v. Massachusetts Bay Cmty. Coll.*, 174 F. Supp. 3d 572, 578 (D. Mass. 2016) (extending time for service where pro se plaintiffs attempted service by Federal Express). The Union was not prejudiced by a delay of a few days. *See*, *id*. In sum, "even if defendants received service late, plaintiff made a good faith effort to serve them within the time limit. [She] has therefore shown good cause for the slight delay." *Holmes v. Meleady*, 738 F. Supp. 2d 196, 201 (D. Mass. 2010) (citations omitted).

---

[5] Summonses to Kelly and Lee were returned unexecuted (##14, 16); they have filed their own motion to dismiss on this basis (#20).

B.  <u>Plaintiff Claims the Union Violated Its Duty of Fair Representation</u>.

   1.  <u>Plaintiff's Claims are Time-Barred</u>.

Plaintiff claims, in essence, that the Union violated its DFR by failing to prevent the MBTA from terminating plaintiff because of her disability, in alleged violation of the ADA, the FMLA, and Section 1983. (#1 at 7 (citing the FMLA and Section 1983).) Plaintiff cites no law on which her DFR claim is based. Nonetheless, federal law would apparently preempt any state law claim. As the First Circuit has stated:

> Preemption also can occur by operation of the so-called duty of fair representation (DFR). A union acting in its representative capacity owes this duty to those on whose behalf it acts. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). The duty derives from the union's status qua exclusive bargaining agent. It implicates section 9(a) of the NLRA, and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).
>
> A complaint that states a DFR claim "allege[s] a breach by the Union of a duty grounded in federal statutes and . . . federal law therefore governs [the] cause of action." *Id.* Consequently, state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation. *See Condon v. Local 2944*, 683 F.2d 590, 594–95 (1st Cir. 1982) (stating that "[a] union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" collectively comprise a field in which "the policy of the law is so dominated by the sweep of federal statutes that legal relations which [those rights and duties] affect must be deemed governed by federal law having its source in those statutes, rather than by local law") (citation and internal quotation marks omitted).

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 830 (1st Cir. 1997); *see also Lawless v. Steward Health Care Sys., LLC*, — F.3d —, No. 17-2128, 2018 WL 3099427, at *3-4 (1st Cir. June 25, 2018) (discussing preemption where claims imply a collective bargaining agreement).

Under federal law, plaintiff's claim is time-barred, having been filed well beyond six-months after her termination. A traditional "hybrid" action involves an individual's suit against an employer for breach of a collective bargaining agreement under Section 301 of the LMRA, and against the union for breach of the common law duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). The statute of limitations for such actions is six months. *Id.* at 172 (holding that hybrid claims are "governed by the six-month provision of § 10(b)" of the LMRA); *Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11 (1st Cir. 1987) (applying six-month statute of limitations); *Rosario v. Paul Revere Transp., LLC*, No. CIV.A. 13-12633-RGS, 2014 WL 585860, at *3 (D. Mass. Feb. 13, 2014) ("Because Rosario did not bring the lawsuit within six months of . . . the date of his last inquiry, his claims fall outside of the statute of limitations.").

Here, plaintiff has sued both the MBTA, her former employer, and the Union, but does not apparently allege that the MBTA breached any collective bargaining agreement.[6] Courts in this district have nonetheless applied the Section 301 six-month statute of limitations to cases where employees bring a claim for breach of the duty of fair representation against the union without a corresponding claim for breach of a collective bargaining agreement against the employer. *See, e.g.*, *Spencer v. Local* 26, 941 F. Supp. 2d 193, 196 (D. Mass. 2013) (allowing motion for summary judgment, noting that "A majority of circuit courts [. . .] have concluded that the § 10(b) six-month statute of limitations applies where the claimed breach of the duty of fair representation concerns allegedly wrongful conduct by employer.") (collecting cases); *Schoppe v. Whitworth*, No. 16-11831-FDS, 2016 WL 7045698, at *2 (D. Mass. Dec. 2, 2016) (relying on *Spencer* and the First

---

[6] Plaintiff alleges a breach of contract action against the MBTA, but it sounds in wrongful termination for disability rather than in any failure to follow collective bargained-for procedures.

Case 1:17-cv-10949-PBS   Document 37   Filed 07/12/18   Page 10 of 15

Circuit's disapproval of attempts to "evade the limitations period of § 10(b) simply by bringing stand-alone claims against unions" to find plaintiff's claim for breach of fair representation against the union was time-barred); *McIntosh v. Local 33 United Roofers, Waterproofers & Allied Workers, No.* CIV. 11-11182-NMG, 2012 WL 3231325, at *1 (D. Mass. Aug. 2, 2012), *aff'd* 1st Cir. 12-2028 (July 1, 2013) ("The six-month statute of limitations set forth in Section 10(b) of the NLRA governs plaintiff's fair representation claim.") (citation omitted). This court finds *Spencer*, *Schoppe*, and the cases cited therein persuasive, and finds that plaintiff's breach of duty of fair representation claim is time-barred under federal law.[7]

Moreover, were plaintiff's claim to be considered under Massachusetts state law, a six-month statute of limitations would still likely apply to her DFR claim.[8] *See Cook v. Boston Carmen's Union, Local 589*, Slip Copy, 93 Mass. App. Ct. 1114 (Table) (2018) ("And, as to the claim that the union breached its duty of fair representation, the plaintiff failed to file a complaint with the Labor Relations Board within six months of the allegedly prohibited conduct.") (citations

---

[7] Plaintiff questions whether the LMRA applies to the Union, arguing that its members, as MBTA employees, are "public employees." (#21 at 5-6.) Under the LMRA, the term "employer" . . . shall not include . . . any State or political subdivision thereof. . . ." 29 U.S.C.A. § 152; *Am. Fed'n of Teachers, AFL-CIO v. Federacion de Maestros de Puerto Rico*, 381 F. Supp. 2d 65, 68 (D.P.R. 2005) (dismissing teachers' claims where, in part, they agreed that their union was not covered by the LMRA because it was "composed entirely of public sector employees"). The MBTA is "a body politic and corporate, and a political subdivision of the commonwealth." Mass. Gen. Laws Ann. ch. 161A, § 2. Nonetheless, the MBTA has not always been considered a state actor for all purposes. *See*, *e.g.*, *Smith v. Massachusetts Bay Transp. Auth.*, 462 Mass. 370, 371, 968 N.E.2d 884, 887 (2012) ("A month later, on November 1, 2009, the MBTA became a 'public employer' under the Tort Claims Act. St.2009, c. 25, § 123. St.2009, c. 26, § 60."). At least one court has considered LMRA claims against the MBTA and the Union. *See*, *e.g.*, *Andrews v. Massachusetts Bay Transit Auth.*, 872 F. Supp. 2d 108, 118-19 (D. Mass. 2012) (dismissing claim against the Boston Carmen's Union under Section 301 of the LMRA for failure to comply with six month statute of limitations). Furthermore, the duty of fair representation is "[a] judge-made doctrine,'" *Lyndon v. Local 103, Intern. Broth. Of Elec. Workers*, 770 F.3d 48, 56 (1st Cir 2014) (citation omitted), which may be broader in scope than the NLRA under which it is implied.

[8] The Union does not raise any failure by plaintiff to exhaust her internal remedies under the collective bargaining agreement with the Union.

omitted));[9] 456 Mass. Code Regs. § 15.04 ("Except for good cause shown, no charge shall be entertained by the Department based upon any prohibited practice occurring more than six months prior to the filing of a charge with the Department.").[10]

2. Plaintiff Has Not Stated A Claim for Breach of Fair Representation.

Even if plaintiff's claims were not time-barred, and no other procedural obstacles persisted, plaintiff has failed to plead facts supporting a breach of duty by the Union in handling plaintiff's grievances. "In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." *Vaca v. Sipes*, 386 U.S. 171, 194 (1967) (noting that "breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious").

> Massachusetts law is the same:
>
> The union may not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." [*Vaca*, 386 U.S. at 191, (1967).] *Graham v. Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606, 555 N.E.2d 543 (1990). In order to find a breach "[t]here must be substantial evidence of bad faith that is intentional, severe, and unrelated to legitimate union objectives." *Id.* at 609, 555 N.E.2d 543 (citations omitted).

---

[9] The cases cited by the Union on the subject of primary jurisdiction of the Division of Labor Relations (DLR), #21 at 6-7, involve Massachusetts General Laws chapter 150E, from which the MBTA is excluded. *See* Mass. Gen. L. ch. 150E § 1 ("excluding authorities created pursuant to chapter one hundred and sixty-one A" from definition of employer); *see also* Mass. Gen. L. ch. 161A § 19A; *Massachusetts Bay Transp. Auth. v. Labor Relations Comm'n*, 425 Mass. 253, 254, 680 N.E.2d 556, 556–57 (1997) (discussing application of chapter 150A to the MBTA). Nonetheless, the court's decision does not turn on primary jurisdiction, or plaintiff's failure to file with the DLR first, but, rather, on the lack of timeliness of plaintiff's filing and the inadequacy of plaintiff's allegations.

[10] In the alternative, if a three-year state statute of limitations were to apply, *see Graham v. Quincy Food Serv. Employees Ass'n,* 555 N.E.2d 543, 549 (Mass. 1990), plaintiff's claim would still fail because of the factual inadequacy of the pleading, as discussed below.

*Cappellano v. Massachusetts Bay Transp. Auth.*, 234, 646 N.E.2d 769, 771–72 (Mass. App. Ct. 1995) (affirming grant of summary judgment where union did not "arbitrarily ignore a meritorious grievance. . . ."). Moreover, "[e]ven if the union, acting diligently and in good faith, misjudges the grievance, it has not committed a breach of the duty of fair representation as long as it has acted rationally." *Id.* at 772 (citing *Early v. Eastern Transfer*, 699 F.2d 552, 555 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983)[;] Walsh, A Judicial Guide to Labor and Employment Law 416-417 (1990)). Thus, plaintiff must allege arbitrary, bad-faith, irrational action by the Union, a high standard which she does not come close to having met.

Plaintiff complains generally that the Union "failed to adequately represent her at any/all disciplinary proceedings in the suspension and subsequent discharging of her by the MBTA. . ." (#1 at 7.) Contrary to these allegations, the only Union-related facts reflected in plaintiff's complaint and the documents attached to it are that plaintiff filed two grievances with the Union, the Union represented plaintiff as to both of these grievances, and the MBTA rejected them. (#1 at 5 ¶ 12, Exs. T, U, Y.) Plaintiff pleads nothing that suggests negligence by the Union, let alone irrationality or bad faith. Rather, plaintiff asks the court to infer, from the fact that plaintiff was terminated by the MBTA, that the Union breached its duty of fair representation. This is not enough. *See Rosario*, 2014 WL 585860, at *3 (finding plaintiff insufficiently stated a claim for breach of the duty of fair representation by the union).

As the court stated in *Rosario*:

The only facts that Rosario alleges (including those contained in his motion for judgment on the pleadings) in support of his claims of "conspiracy" and "bad faith" against the Union are: (1) that the Union elected not to pursue his grievance to arbitration; and (2) that it failed to inform him of its decision. These allegations, at best, amount to a claim of negligence on the part of the Union, which "will not usually rise to the level of a breach of its duty of fair representation."

*Id.* at *3 (quoting *Demars v. Gen. Dynamics Corp.*, 779 F.2d 95, 98 (1st Cir. 1985)). Here, the Union did pursue plaintiff's grievances and, as apparent in the documents, worked on plaintiff's behalf. Like in *Vaca*, "[t]here [is] no evidence that any Union officer was personally hostile to [plaintiff] or that the Union acted at any time other than in good faith." 386 U.S. at 194; *see also Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 330–31 (1st Cir. 1992) (affirming grant of summary judgment on claim for breach of DFR where "plaintiffs have failed to create a genuine issue as to whether Local 1575 acted discriminatorily or in bad faith").

C. <u>Plaintiff Has Not Stated a Claim that the Union Violated Section 1983</u>.

Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights. . . ." *Gagliardi*, 513 F.3d at 306.

In order to state a claim for violation of Section 1983:

> "[A] plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." [. . .] [A] private party can—in "rare circumstances"—be deemed a state actor for § 1983 purposes if one of three tests is met. The first test is the state compulsion test. Under this test, a private party is fairly characterized as a state actor when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State. . . . The second test—the nexus/joint action test—deems a private party a state actor where an examination of the totality of the circumstances reveals that the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]. Finally, under the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally the exclusive prerogative of the State.

*Klunder v. Brown Univ.*, 778 F.3d 24, 30–31 (1st Cir. 2015) (internal quotations and citations omitted).

There is no allegation that the Union is a state actor, nor would such an allegation prove successful. Plaintiff does not allege that the Union was performing a traditionally-public function. To the contrary, it appears that the Union twice presented evidence on plaintiff's individual behalf, upon her request, to challenge proposed actions of the MBTA. (#1 at 5 ¶ 12, Exs. T, U, Y). Plaintiff does not claim the Union's advocacy, on her behalf, was a traditionally-public function. Plaintiff fails to plead, then, that the Union was a state actor.

Even assuming the MBTA would be considered a state actor for purposes of a Section 1983 action, there are no allegations that the MBTA controlled the Union. Nor does plaintiff allege that the Union acted in concert, or conspiracy, with the MBTA. *See Bolet v. Puerto Rico Elec. Power Auth.*, 109 F. Supp. 3d 459, 466 (D.P.R. 2015) (granting motion to dismiss Section 1983 claims against union officials where there were insufficient allegations that they acted in conspiracy with the state but denying motion to dismiss against officials against whom the allegations were sufficient). Where there is no action by a state actor, plaintiff's Section 1983 claim against the Union is doomed.[11]

V. Recommendation.

For the above reasons, the court RECOMMENDS that the Union's motion to dismiss (#21) be GRANTED.

---

[11] Plaintiff does not appear to claim that the Union violated the ADA, FMLA, or Rehabilitation Act, nor could she. Plaintiff does not plead that the Union was her employer or that it took any discriminatory action towards her. Rather, plaintiff's primary complaint appears to be that the Union was unable to help plaintiff keep her job. Read most charitably, plaintiff claims that the Union thus allowed the MBTA to violate anti-discrimination laws. Even if this were enough to state a claim against the Union, as this court holds in its companion opinion, plaintiff has stated no claim that the MBTA violated the applicable anti-discrimination laws, and thus the Union could not be liable on any sort of conspiracy or agency theory.

VI. <u>Review by District Court Judge</u>.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

July 12, 2018

/s/ M. Page Kelley  
M. Page Kelley  
United States Magistrate Judge